Dufur, Appellant, vs. Paulson and another, imp., Respondents.

*April 9 — April 30, 1901.*

*Logs and timber: Liens: Assignment: Payment: Partnership: Practice: Judgment: Appeal: Case: Briefs: Costs.*

1. The mere fact that one is a partner in a firm owning a part of logs driven under a "pooling" arrangement between the owners thereof, does not prevent him from purchasing lienable claims in his own behalf, and enforcing them against the logs driven, and such purchase does not constitute payment nor extinguish the liens.

2. Where part of the defendants were in default, a general judgment dismissing the complaint will be reversed on appeal, as no judgment could properly be rendered in favor of such defaulting defendants.

3. A "case" which contains neither pleadings, verdict, charge, exceptions, nor evidence, except selections from the testimony of certain witnesses printed either as partisan statements or incomplete and misleading quotations, does not comply with Supreme Court Rule VIII, requiring so much of the record to be printed as shall be necessary to a full understanding of the question presented for review; and no costs can be taxed for printing it.

4. Under Supreme Court Rule XXVII no costs will be allowed for printing a brief containing language disrespectful to the trial court.

Appeal from a judgment of the circuit court for Ashland county: Frank M. Fish, Judge. *Reversed.*

It appeared that in the spring of 1898 logs of various owners became mingled in the White river waters; that such logs belonged partly to the firm of Younker & Co., claimed by the plaintiff to consist of John Younker and C. Dufur, mother of the plaintiff, marked "W. B."; other logs to the firm of Peterson & Paulson, marked "K. M." and "B. E. P."; other logs belonging to John F. Johnson, marked "Baby Foot"; other logs of Wilkinson & Co., marked "A. M."; that, after such commingling, all of the above-named owners entered into an agreement on June 9, 1898, called a "pool-

ing " arrangement, whereby they authorized J. H. Younker and one Charles Crogster to manage the drive for all of them, they agreeing to contribute proportionately to their quantity of logs.   Crogster shortly dropped out, and Younker superintended the drive, and to that end employed one Belknap, who issued time checks, of which forty-nine aggregating $797.09, claimed to have been purchased by the plaintiff in his personal capacity, are the subject of this suit.   Plaintiff filed a petition for lien to enforce the whole of said time checks against only two of the four ownerships of logs, namely, the Peterson & Paulson and the John F. Johnson. He afterwards commenced this suit to enforce such lien, stating a separate cause of action upon each of said forty-nine time checks, and joining as defendants a firm of Fossen & Co., who, by contract, were under obligation to drive the Peterson & Paulson logs.

All of the defendants except *Peterson* and *Paulson* suffered default.   They interposed answer, wherein they first set up a plea in abatement, alleging that the plaintiff, *Dufur*, was a copartner with John H. Younker at the times mentioned in the complaint, "and that said plaintiff was such copartner and jointly interested with the said J. H. Younker in the ownership of the logs marked 'W. B.,' which were a part of the logs upon which the work described in the complaint herein was performed, for which work the time checks described in the complaint were issued; and that said J. H. Younker is a necessary party to this action."   The answer further proceeds with defensive matter, charging that other parties than the defendants were liable and their logs responsible proportionately for these time checks, alleging that the defendants Peterson & Paulson had fully paid their share for the driving, and alleging that *Dufur*, instead of buying said time checks, had taken up and paid them on behalf of the said copartnership of Younker and *Dufur*, and that they were extinguished; also setting up as counterclaim

an alleged indebtedness of Younker & Co. to them.  Said defendants also tendered $75 in full of any liability by them upon the cause of action set out in the complaint, and subsequently deposited the $75 in court, where it was at the time of rendition of judgment.

Upon the trial, evidence was given upon the various issues, and at the close of the evidence both parties moved for a direction of verdict.  There was argued the question of law as to the right of the plaintiff to buy in time checks, and discriminate among the several parties liable therefor by releasing the logs of some and attempting to enforce the whole against the logs of only a part; whereupon the court announced that he would take a special verdict on the plea in abatement anyhow, inquired of counsel if there was any other issue of fact they would like to have submitted, and thereupon submitted to the jury the following question by way of special verdict: " Was the plaintiff, *John F. Dufur*, a partner in the firm of John H. Younker & Co. at the dates and times mentioned in the complaint?" which was answered in the affirmative.  The court charged the jury, to which charge some exceptions were taken by the plaintiff; but neither the charge nor the exceptions are embodied or identified in the bill of exceptions.  Thereupon motions for judgment notwithstanding the verdict and for new trial were overruled, and judgment dismissing the complaint was entered, apparently upon the plea in abatement, from which judgment the plaintiff appeals.

*John F. Dufur*, appellant, in person.

For the respondents there was a brief by *Sanborn, Gleason & Sleight*, and oral argument by *Richard Sleight*.

DODGE, J.  The trial below seems wholly inconclusive upon any of the issues joined.  Upon the merits no determination either by court or jury seems to have been made as to any issue of fact.  Upon the plea in abatement a question was

Dufur vs. Paulson and another.

answered by the jury, but that question and answer have no relevancy to the maintenance of that plea. Plaintiff may have been a partner with Younker at all of the times mentioned in the complaint, as the jury finds, and yet have perfect right to maintain this action for part, at least, of the relief sought. Such partnership would not render it impossible for him to purchase and take assignment of these time checks, and to enforce liens therefor upon the logs driven. No objection could be made unless by his partner, to whom he might owe some fiduciary duty. If the claims became plaintiff's individual property, he might sue thereon alone, and the plea in abatement could not be sustained. On this, the only material question,— whether plaintiff bought the time checks individually or on behalf of the firm,— no decision was made below.

While the verdict was taken expressly with relation only to the plea in abatement, the question of partnership had some relevancy to the issue of payment. Indeed, plaintiff's counsel distinctly conceded that, if plaintiff was a partner with Younker, no recovery could be had, because his purchase would then constitute a payment of the time checks, and would extinguish the liens securing them. We need not consider whether even the firm owning part of these pool logs might not so purchase lienable claims against them as to keep alive the lien right, for, as already stated, an individual partner certainly might. We cannot, therefore, agree with the concession of plaintiff's counsel, and hold the mere existence of partnership conclusive against plaintiff's recovery. If he purchased the time checks individually, it would not constitute payment nor extinguish the lien. Hence, even if we apply the verdict to the defenses offered in bar, it is alike inconclusive as upon the plea in abatement. It is not contended, and could not be successfully, that the judgment is supported by uncontradicted evidence, and it must be reversed, since it cannot find support in the verdict.

Another very obvious ground for reversal of this general judgment dismissing the complaint is that all of the defendants other than *Peterson* and *Paulson* were in default, in effect conceding plaintiff's right to recover. Certainly, no judgment could properly have been rendered in their favor.

While, apparently, it was not considered upon the trial that any issues of fact needed to be passed on by the jury other than the plea in abatement, we cannot feel justified in attempting to direct a judgment here, even if we should conclude, as appellant asserts, that no evidence supports the assertion of partnership. The proceedings upon the trial, as brought before us even by the bill of exceptions, are involved in too much of confusion and uncertainty to warrant such a step. *Brown v. Griswold,* 109 Wis. 275. In addition to this, the appellant has neglected to print in the case even that which the record does disclose.

2. The appellant alleges twelve assignments of error, including refusal to direct verdict, refusal to enter judgment notwithstanding verdict, refusal to direct with reference to a tender deposited in court, giving of erroneous instructions, and others; thus necessitating for their consideration a complete examination of the entire record, including the evidence. The record contains about 150 pages, the printed case but nineteen. It contains neither pleadings, verdict, charge, exceptions, nor evidence, except about eight pages of disconnected selections from the testimony of certain witnesses. On no single subject discussed by counsel has it been possible to pass without going to the record itself. Worse than this, the matter which is printed is either partisan statement or incomplete and misleading quotation. The printed case fails wholly to comply, either in letter or spirit, with Rule VIII, and no costs can be taxed therefor.

A still more serious infraction of our rules and of profes-

sional propriety forces our attention.   In appellant's brief
we find the following:

"Ninth. The court erred in his charge to the jury.   The
charge indicated clearly the feeling of the court.  The court
said to the jury: 'The question for you to determine is
whether or not at those times *John F. Dufur* was the " part-
ner in interest " with John H. Younker in the firm of J. H.
Younker & Co.'   This is absurd, nonsensical, ridiculous, and
prejudicial."

Under no circumstances can such language with refer-
ence to a trial court be either justified or excused,— certainly
not when used with the deliberation attendant upon the
preparation of a printed brief for this court.   The instance
before us is especially inexcusable in that the appellant,
who uses it, has not brought up for review the charge of
the court thus characterized.   The bill of exceptions does
not contain it either in words or by identification, by which
means only can we receive authentic information of its con-
tents.   The disrespectful epithets are therefore gratuitous,
and without even self-interest as palliation.  Appellant must
at least suffer the penalty of loss of costs for printing in
such cases denounced by Rule XXVII.

*By the Court.*— Judgment reversed, and cause remanded
for further proceedings according to law.   No costs will be
allowed for printing case or brief.